RAYBURN vs. DEAVER.

R., as the security of S., entered into bond to the sheriff of St. Louis county in the sum of *thirteen* dollars, conditioned for the return, &c., of property levied on in attachment against S., &c., stated in the condition to be worth *seven hundred* dollars. The Circuit Court, on motion, under the act of February 15th, 1841, concerning attachments, (Laws of Mo., session acts 1840-1, p. 15,) rendered judgment on the bond, against R., for the sum of six hundred and sixty-two dollars and eighty-three cents. *Held :*

. That although it might be conjectured, from the condition, that there was an omission of a part of the sum designed to be inserted in the penal part of the bond, yet as it was free from ambiguity on its face, the application of the ordinary rules of construction, in cases of ambiguity, were not applicable, and the court, therefore, erred in rendering judgment for more than the penal sum.

2. It is the peculiar province of courts of equity to relieve against mistakes and omissions; but courts of law act on the contracts of parties as they find them, only applying the rules of construction where the instrument is ambiguous on its face.

APPEAL from St. Louis Circuit Court.

Polk, *for Appellant.*

1. The court below committed error in rendering judgment against appellant for $662 83, when the bond is only $13.

2. As the bond in this case was executed on the 30th June, 1838, and the act of the legislature on which the motion was based was not passed until the 15th of February, 1841, the Circuit Court did wrong to entertain the motion of plaintiff below, and give judgment against the appellant, upon it, in a summary way.

3. The record, in this case, does not show that any execution ever issued on the judgment against Bogardus and Snowden. But it is not only necessary that execution should have *issued*, but it should also have been *returned no property found.* — See acts of 1840, '41, p. 15.

Primm *and* Taylor, *for Appellee.*

1. The judgment was properly entered up under the act of 1841, concerning attachments. It is well settled, that a party can enforce the payment of a claim accruing during the existence of one remedial law, according to the mode prescribed by a subsequent remedial law.— 2 Cowen, 626; 4 Wheaton, 200, 204; 12 Wheaton, 378; and the case decided by the United States Supreme Court at the January term, 1843, entitled, "Arthur Bronson *vs.* John H. Kinzie et al.," which is direct in point.

2. There was no error in the court supposing the bond to be for $13, as it is very apparent it was a mere clerical omission, and was sustained by common sense, by the obvious intentions of the obligors as deduced from the law under which the bond was given, and the very words of the bond itself.— See case of Grant and Finney *vs.* Brotherton's Administrators, &c., 7 Mo. Rep., 458; the reasoning of which case applies with great force here.

Hudson *and* Holmes, *for Appellee.*

After verdict and judgment every thing will be presumed in law to have been done, which was necessary to have been done, in order to entitle the party to such verdict and judgment.— Greenl. on Evidence, sec. 19; 4 Dallas, 97; Catten *vs.* Hood's Executors, Greenl., 20, sec. 539.

NAPTON, *Judge, delivered the opinion of the Court.*

Deaver commenced an action of assumpsit against Alonzo Bogardus and Arthur Snowden, and sued out a writ of attachment, after making the necessary affidavit. By virtue of this writ, the sheriff levied on goods and chattels to the value of seven hundred dollars, which goods were restored to the defendants on their entering into bond to the plaintiff, in conformity to the provisions of the statute.

The penal portion of the bond reads as follows:—"Know all men by these presents, that we, Robert R. Snowden, as principal, and Samuel S. Rayburn, as security, are indebted unto James Brotherton, sheriff of St. Louis county, or his assigns, in the sum of thirteen dollars, for the payment whereof we bind ourselves, our heirs, executors, and administrators, firmly by these presents. Sealed with our seals, and dated this 30th June, 1838." The condition annexed to this obligation was for the return of the property levied on, specified in the terms of the condition, and stated to be worth seven hundred dollars,

Judgment went for the plaintiff at the April term, 1841, for six hundred dollars, upon which judgment a writ of *fieri facias* issued, and returned *nulla bona* by the sheriff of St. Louis county.

At the July term, 1841, the appellee moved the court to amend the aforesaid bond, by inserting the word "hundred" after the word "thirteen" in the penal part of the bond: which amendment was so ordered.

At a subsequent period of the same term, the appellant moved the court to set aside said order of amendment, which motion was sustained, and the order of amendment rescinded, and the amendment expunged.

At the July term, 1842, appellee moved the court for judgment against the principal and security in the aforesaid bond, in pursuance of an act for the recovery of debts by attachment, approved February 15th, 1841, and thereupon judgment was rendered against the appellant for $662 83, being the amount of the judgment against Snowden and Bogardus, with interest and costs.

From this judgment, Rayburn, the security, appeals to this Court.

The appellant, for a reversal of judgment, relies on the fact that the judgment is for a sum exceeding the penalty of the bond.

As the judgment of the Circuit Court was given on the bond in its original shape, the amendment which had been first allowed having been cancelled, the propriety of the action of that court in allowing the amendment is not a subject of inquiry now.

Could the court, then, enter up a judgment for six hundred dollars, when the bond of the party was only for thirteen dollars?

This was clearly erroneous, unless the court was at liberty, by some rule of construction, to supply the word "hundred," and consider the bond as a bond for thirteen hundred dollars.

The case of Grant and Finney *vs.* Brotherton's Administrators is relied on by the appellee, to justify this construction of the bond. The case, we think, is not in point. There the penalty of the bond was "five hundred;" but the kind of money was not specified, an omission which, if not supplied by some rule of

construction, rendered the bond entirely unintelligible and ineffectual. The bond, on its face, was ambiguous. Here the bond presents no difficulties on its face; and though we might conjecture, from its condition, that there was an omission of a part of the sum designed to be inserted, yet if we undertake to supply the omitted word, we rather correct a mistake, than construe an instrument.

The antecedent condition necessary in all cases to the application of rules of construction, is the existence of ambiguity or omissions apparent on the face of the instrument.

When there is no ambiguity, no omission apparent on its face, no construction is necessary. Courts of equity are established, whose peculiar province it is to relieve against mistakes and omissions; but courts of law act on the contracts of parties as they find them, applying, when doubts arise, those reasonable rules of construction which have been devised by the wisdom of ages, and whose main object is to ascertain the true intent and meaning of the parties.

Judgment reversed.

Scott, *Judge*, absent, from indisposition.