Brannock v. Elmore.

BRANNOCK v. ELMORE, *Appellant.*

Division One, February 6, 1893.

1. **Negligence:** BLASTING ROCK: ORDINANCE. It is actionable negligence to violate an ordinance which prohibits blasting of rock without first covering it with timber.

2. ———: ———: ———: INDEPENDENT CONTRACTOR. Where a lot owner makes a contract for its excavation for a building thereon by persons whom he knows to be in the habit of blasting, in violation of said ordinance, he is answerable for damages caused by their blasting on his lot without covering the rock, even though he retains no control over them in the execution of their work, since his implied permission for them to blast as they had been blasting is equivalent to a direction to do so.

3. ———: ———: ———: ———. An employer cannot relieve himself from liability in such case by giving the contract to persons who are known to be incompetent or negligent.

4. **Contract, Legal Effect of:** QUESTIONS FOR COURT. It is the province of the court to instruct the jury as to the legal effect of a contract, whether it is oral or written.

5. **Presumption.** One has no right to presume the existence of a fact which he knows, or has reason to know, does not exist.

114   55
117   242

114   55
71a  171

114   55
157   641
d85a   63

114   55
162   249

114   55
165   541

114   55
99a  ¹185

*Appeal from Jackson Circuit Court.*—HON. JOHN W. HENRY, Judge.

REVERSED AND REMANDED.

*Scammon, Stubenrauch & Pence* for appellant.

(1) A demurrer to the evidence ought to have been sustained. The firm of Railey & Crowburger contracted to take the rock out of appellant's cellar at forty cents per perch, using their own means and methods for accomplishing this result. The contract was completed without any interference on appellant's part. The contract constituted Railey & Crowburger independent contractors, and the relation of master and servant in no wise existed between them. Deering on Negligence, sec. 230; Wharton on Negligence, sec. 181; *Schweickart v. St. Louis*, 2 Mo. App. 571; *Morgan v. Bowman*, 22 Mo. 548; *Barry v. St. Louis*, 17 Mo. 105; *McCafferty v. Railroad*, 61 N. Y. 180; *Blumb v. City of Kansas*, 84 Mo. 113; Smith, Law of Negligence [2 Eng. Ed.] 84–85, *et seq; Dillon v. Hunt*, 82 Mo. 150; *Fink v. Furnace Co.*, 82 Mo. 283; *Gibbon v. Railroad*, 66 Wis. 546; 2 Thompson on Trials, sec. 2319; *Morgan v. Durfee*, 69 Mo. 466; *Field v. Railroad*, 80 Mo. 203; *Wentz v. Morrison*, 17 Tex. 372. (2) The court erred in giving instructions 1, 2 and 3 of its own motion to the jury. They were unwarranted either by the law or by the evidence. *Henry v. Bassett*, 75 Mo. 89; *Albert v. Besel*, 88 Mo. 150; *Railroad v. Clary*, 77 Mo. 634; *Peterson v. Lake*, 24 Mo. 540; *Matlock v. Dubreuil*, 9 Mo. 477; *Belt v. Goode*, 31 Mo. 129; *Hickey v. Ryan*, 15 Mo. 63; *Fugate v. Carter*, 6 Mo. 267; 2 Thompson on Trials, sec. 1006; *Peck v. Ritchey*, 66 Mo. 114; *Bank v. Lonnergans, Adm'x*, 21 Mo. 46. (3) Instruction number 2, given on behalf of the plaintiff,

was erroneous. It told the jury that: "If they found from the evidence that plaintiff had no notice that a blast was about to be made, and had no notice that the blast was not protected with plank or timber, then she was not guilty of contributory negligence." *Peterson v. Lake,* 24 Mo. 540; *Matlock v. Dubreuil,* 9 Mo. 477; *Hickey v. Ryan,* 15 Mo. 63; *Fugate v. Carter,* 6 Mo. 267; *Leavitt v. La Force,* 71 Mo. 356; *Roan v. Winn,* 93 Mo. 501; Cooley on Torts, 674. (4) The court erred in refusing to give the several instructions asked by the defendant. *Gibbon v. Railroad,* 66 Wis. 546; Thompson on Trials, sec. 2319; *Morgan v. Durfee,* 69 Mo. 466; *Field v. Railroad,* 80 Mo. 203; *Morgan v. Bowman,* 22 Mo. 548; *Barry v. St. Louis,* 17 Mo. 105; *McCafferty v. Railroad,* 61 N. Y. 190; *Blumb v. City of Kansas,* 84 Mo. 113; Smith, Law of Negligence [2 Eng. Ed.] 84.

*Fyke & Hamilton* for respondent.

(1) Railey & Crowburger were not independent contractors. Appellant not only had the right under the arrangement between him and Railey & Crowburger to control the work, but did in fact exercise control over them by telling them where to work, by hurrying them up, and by employing, without objection from them, other men to engage in the same work; and he had the undoubted right to discharge them at any time. "He had not parted with the whole control over the work and the workmen." *Morgan v. Bowman,* 22 Mo. 538; *Booth v. Railroad,* 17 N. Y. S. 336; *Dressell v. City of Kingston,* 32 Hun, 533; *Water Co. v. Ware,* 16 Wall. 566. (2) If the work was done upon defendant's premises in such a manner as to constitute a nuisance, in his presence and without objection, he is liable. Blasting is not a nuisance *per se,* but when the manner of doing it is prescribed by law, it is, when

done contrary to the manner prescribed, a nuisance; and for so doing or permitting it to be done upon his premises defendant, we think, ought to be held. .(3) It was defendant's duty to give notice that the blast was about to be fired, and his failure to do so was negligence. *Driscoll v. Newark*, 37 N. J. 637; *St. Peter v. Dennison*, 58 N. J. 416. (4) The violation of any statutory or valid municipal regulation, established for the purpose of protecting persons or property from injury, is of itself sufficient to prove such a breach of duty as will sustain a private action for negligence if the other acts of actionable negligence concur. 1 Shearman & Redfield on Negligence, sec. 13; *Shipley v. Calclough*, 45 N. W. Rep. 1106.

MACFARLANE, J.—This is an action by plaintiff to recover damages for personal injuries caused by the alleged negligence of defendant in blasting rock on a lot in Kansas City near a public street.

The petition charges that defendant in May, 1889, was in possession of certain lots on Perry avenue in Kansas City, by his servants and employes making excavations thereon; that the following ordinance was in force in said city at the time: "No persons shall blast or cause to be blasted any rock without having the rock covered at the time of setting off of the blast, and all sides of the orifice protected with good sound plank or timber sufficient in length, width and thickness, and so placed as to effectually prevent fragments of rock from ascending into the air;" that on said day while she was in the lawful use of said street the servants of defendant, without observing the requirements of the said ordinance, negligently and without notice to plaintiff discharged a blast of powder or other explosives, by which a stone was violently thrown against her, by which she was greatly injured.

The answer was a general denial, a plea of con-
tributory negligence and the further plea that the men
engaged in excavating were not servants or employes,
but mere independent contractors with defendant to
remove the rock from the lots at a certain price per
yard, by means and methods of their own, independent
of order, direction or control of defendant.

That, when the blast was made, the rock was not
covered or protected as required by the ordinance, and
that plaintiff was severely and permanently injured by
a fragment of rock thrown into the air by the blast, is
unquestioned. The other facts will sufficiently appear
from the opinion.

At the conclusion of the evidence of plaintiff, in
chief, and again at the close of all the evidence, the
defendant asked an instruction to the effect that the
evidence was not sufficient to authorize a verdict against
defendant. This was refused and the action of the
court in so doing is the first error assigned.

I. The only undisputed negligence shown was in
the omission to obey the requirements of the ordinance.
The ordinance was a wise and valid regulation, made
for the protection of persons and property from injury.
If its provisions had been observed this injury to
plaintiff would not probably have occurred. The dis-
regard of the ordinance was in itself an omission of
duty, sufficient to justify a verdict for plaintiff against
the person who was guilty of the negligent omission:
1 Shearman & Redfield on Negligence, sec. 13; *Murray
v. Railroad,* 101 Mo. 236; *Dickson v. Railroad,* 104
Mo. 501.

II. But it is insisted that the omission was not that
of defendant himself and that no such relationship
existed between him and the persons who set off the
blast without taking the required precaution, as would
render him liable for the result.

The evidence shows that defendant was preparing for the erection of a building on his lot on Perry avenue. That to prepare the ground for cellar and basement an excavation into underlying stone was necessary. This excavation was being done by two colored men, Railey and Crowburger, under a verbal agreement between defendant and them. That agreement we must gather from the evidence, and by it determine the relation of the parties to each other.

Railey as a witness for plaintiff testified as follows: "When Crowburger and I made our contract with Elmore to excavate his cellar at forty cents a perch, nothing was said about blasting it out. Of course we were to blast it out if it was necessary. Nothing was said about the methods we were to adopt, whether it was quarrying or blasting or by prying it up. But both parties expected we would have to quarry, just as I did on Mr. Brannock's lot adjoining there. We expected, Mr. Crowburger and I, to adopt the methods according as we found it most useful. We furnished our own tools, powder, fuses, and all that sort of thing. * * * When we made the agreement with Mr. Elmore nothing was said about how the work was to be done. We knew we would have to blast. I supposed Mr. Elmore knew it. We generally drew a little money nearly every Saturday night. We got our powder and stuff with the money."

Defendant himself testified in his own behalf as follows: "My arrangements with Railey & Crowburger were that they were to take the rock out of the cellar at so much a perch. They were to take out what we wanted for the basement and what we wanted for the cellar. This was indicated by being staked off. It was staked out in the shape of a cellar. Mr. Dolson did that; I think I helped to stake it off; it was to go down about five feet. They were to blast it down so it

would be five feet.    They were to take the rock all out down that depth, and I was to take off the dirt and the loose rock.    The dirt and loose rock was taken off by plowing the dirt and I took it off with a scraper.   I gave Mr. Schriver and Mr. Jarboe eighteen cents a yard for doing that.    My arrangements with these parties were to take off the loose rock that came in the dirt.    I was to pay them by the day for hauling off the loose rock; but the ledge rock was contracted to Railey & Crowburger at forty cents a perch.    They furnished everything themselves.   I had nothing to do with it. I gave them no directions whatever.   I never exercised any control over them as to the methods or means they should use for getting it out.   I settled with them after they got through, and the rock was put in the wall, so it could be measured.    *    *    *    I was out there every day or two.    Saw Railey when he was blasting; never paid any attention to how he covered the blast. *    *    *    They had to blast the stone.   I knew nothing about how they would cover it.   I knew they were not using any timber to cover the blast with; I never made any objections to that.   I had nothing to do with it."

Samuel Crowburger testified as to the agreement as follows:   "My arrangement with him was to quarry for forty cents a perch.   I mean the stone on the lot where his house was to stand.   My partner and I were to furnish the help and material for doing that.   We were working by the perch, forty cents a perch.   Mr. Elmore did not, as I know of, give us any directions while we were engaged in quarrying out the cellar as to the way, manner or means we should use in getting it out, more than he told us he wanted us to get along faster than we were."

This was in substance the evidence of the three parties to the contract.

It was shown that Railey & Crowburger had been engaged for two or three months prior to their employment by defendant, in excavating a lot belonging to Mr. Brannock the husband of plaintiff, which adjoins that of defendant, and that they became acquainted with defendant while so engaged. Railey testified that they had been quarrying for Mr. Brannock for two or three months. "We did not cover the blasts with timber at all. I had been in the habit of covering them with stone and it always answered." The evidence further shows that defendant had at work in the excavation three other men who were paid by the day. They were taking out loose rock and dirt and did a little blasting.

In determining the legal effect of the contract and the construction to be put upon its terms we have a right to consider the situation of the parties and their methods of doing the same class of work, and to assume that the contract was made with reference thereto. It is true that it is presumed that the contractor is employed to do an act in a reasonable and careful manner, yet if he have methods of his own known to his employer, which are in themselves negligent or unlawful, the presumption will be that he was left free to adopt his own negligent method. An employer cannot relieve himself from liability by giving the contract to one who is known to be incompetent or negligent. 2 Thompson on Negligence, 899, sec. 22; Wharton on Negligence, sec. 181. *Dillon v. Hunt*, 82 Mo. 155.

We think the contract between defendant and these employes which may be fairly deduced from the foregoing evidence together with the circumstance in which it was made was that Railey and Crowburger were employed by defendant, at forty cents per *yard*, to make an excavation of defined dimensions into the

rock, by means of blasting in their customary way, they to furnish all needful material, adopt their own methods and to be free from the control or direction of defendant in other respects, except that defendant reserved the right to put his servants into the same excavation to remove dirt and loose rock, but not to interfere with the work of Railey & Crowburger.

The evidence then tends to prove that the negligence, which caused the injury to plaintiff, was the result of executing the work in the manner contemplated by the parties in making the agreement, and, if true, under the well settled law of this state "defendant cannot relieve himself from liability or shift responsibility to the contractor." *Lancaster v. Ins. Co.*, 92 Mo. 464; *Horner, Adm'r, v. Nicholson*, 56 Mo. 220; *Morgan v. Bowman*, 22 Mo. 538.

If the contract had been in writing and had specified that the work should be done in a particular way, which was in itself negligent, then under the foregoing decisions defendant would be held liable for damages resulting from its execution in the negligent manner provided, though no further control had been retained over the work. The same rule should apply here if the contract was made with the knowledge, on the part of defendant, that under it the work would be done in a negligent manner. In such case permission should be held equivalent to direction. There was evidence upon which the issues were properly submitted to the jury.

III. Complaint, which we think well founded, is made to the second instruction given by the court on its own motion. The objection is that it leaves the jury to determine whether the defendant, under the contract, had any "control over said excavating as to the manner of doing the work." This, it is claimed, was a question of law for the decision of the court and not of the jury.

It will be observed that the vital question in this case is whether defendant retained control of the ways and means of making the excavation. If he retained the right to direct how the blasting should be done, or agreed that it might be done in a manner negligent in itself, then the act of those doing it would be his act, and for the manner in which it was done he would be responsible. Whether he had any control over the manner of doing the excavating is clearly a question of law to be deduced from the facts. This was a contract for construction by the court from its terms. It is always regarded as the province of the court to give to the jury the legal effect of a contract, whether verbal or written. If this had been a written contract the court never would have submitted to the jury the question whether under it defendant had control of the manner of doing the work. Says Judge NAPTON in an early case: "Where the contract is by parol, it is the province of the jury to ascertain its terms, but the determination of its legal effect belongs to the court." *Belt v. Goode*, 31 Mo. 129. Instructions which leave to a jury the determination of questions of law have been disapproved by this court in many cases. *Henry v. Bassett*, 75 Mo. 89; *Albert v. Besel*, 88 Mo. 150; *Railroad v. Cleary*, 77 Mo. 634.

IV. At the request of plaintiff the court instructed the jury that she had the right to presume that the city ordinance read in evidence would be complied with. There was no error in this under the evidence. But, on the trial, defendant offered to prove by a witness that plaintiff knew that the blasting was done in disregard of the ordinance. This evidence was not admitted. In this we think the court committed error. The fact that plaintiff knew, or did not know, that the requirements of the ordinance were not observed, was material and was so regarded by the court, as is shown by the

instruction given. What might have been proper care and caution on her part, may have depended on her knowledge of the precaution taken in blasting to prevent fragments of rock from flying in the air. One has no right to presume a fact which he knows or has reason to know does not exist. *Roddy v. Railroad*, 104 Mo. 250.

V. Error is assigned to the refusal of the court to give a number of instructions asked by defendant. Some of these did not recognize the principle that an employer would be liable for injuries inflicted on another by a contractor in carrying out negligent plans prescribed or assented to as a part of the contract, but limited the liability to negligent acts of employes in using methods over which he retained control. The other instructions that were refused were fully covered by those given by the court of its own motion.

For the errors noted the judgment is reversed and cause remanded. All concur.

### CONCURRING OPINION.

BARCLAY, J.—I concur for the reason that the only instruction on the measure of damages was given at plaintiff's instance, was of the sort disapproved in *Hawes v. Stock Yards Co.*, 103 Mo. (1891), 60, and was followed by a verdict for $5,000; so that we cannot safely pronounce it harmless. It was as follows, namely:

"The court instructs the jury that if you find for the plaintiff, you will assess her damages at such sum as you may believe from the evidence will compensate her for the injuries sustained by her, not exceeding $10,000.