EMBRY, Appellant, v. HARGADINE, McKITTRICK DRY GOODS COMPANY, Respondent.

St. Louis Court of Appeals, November 5, 1907.

1. **CONTRACTS: Intention: Meeting of Minds.** Whether a conversation between two parties constitutes a contract will depend upon their intention, but whether there is a meeting of minds in any intention to form a contract must be determined by the language used and not by any secret intention of the parties.

2. ——: ——: **Construction of Language.** An employee in a mercantile establishment whose term of one year had expired went to his employer and demanded a renewal of his contract for another year. The. employer inquired how the employee was getting along with his department, and the latter replied .that they (the employees of his department) were busy getting out salesmen. The employer then said: "Go ahead you are all right, get 'your men out and do not let that (the contract for another year) worry you." This was a contract of employment, if the employee so understood it, whether the employer had a different secret intention or not.

Appeal from St. Louis City Circuit Court.—*Hon.* · *O'Neill Ryan,* Judge.

REVERSED AND REMANDED. ·

*Sloan Pitzer* for appellant; *E. W. Banister* of counsel.

*Johnson & Richards* and *John H. Holliday* for respondent.

(1) The plaintiff declared upon an express contract of hiring for one year, but totally failed to prove

any contract. Hayes v. Bunch, 91 Mo. App. 470; Lewis v. Slack, 27 Mo. App. 129; Feurt v. Ambrose, 34 Mo. App. 366; Boogher v. Insurance Co., 8 Mo. App. 533; Leveridge v. Lipscomb, 36 Mo. App. 630; Finger v. Brewing Co., 13 Mo. App. 311; Evans v. Railway, 24 Mo. App. 114. (2)' Instruction No. 1 in appellant's statement was incomplete as offered by appellant and was properly modified by the court. Embry v. Dry Goods Co., 115 Mo. App. 134; Newberry v. Durand, 87 Mo. App. 296; Ling v. Westerman, 80 Mo. App. 594, 595; McCormack v. Henderson, 100 Mo. App. 654.

GOODE, J.—We dealt with this case on a former appeal (115 Mo. App. 130). It has been retried and is again before us for the determination of questions not then reviewed. The appellant was an employee of the respondent company under a written contract to expire December 15, 1903, at a salary of $2,000 per annum. His duties were to attend to the sample department of respondent, of which he was given complete charge. It was his business to select samples for the traveling salesmen of the company, which is a wholesale dry goods concern, to use in selling goods to retail merchants. Appellant contends that on December 23, 1903, he was re-engaged by respondent, through its president, Thos. H. McKittrick, for another year at the same compensation and for the same duties stipulated in his previous written contract. On March 1, 1904, he was discharged, having been notified in February, that on account of the necessity of retrenching expenses, his services and that of some other employees, would no longer be required. The respondent company contends that its president never re-employed appellant after the termination of his written contract and hence that it had a right to discharge him when it chose. The point with which we are concerned requires an epitome of the testimony of appellant and the counter-testimony of Mc-

Kittrick, the president of the company, in reference to the alleged re-employment. Appellant testified that several times prior to the termination of his written contract on December 15, 1903, he had endeavored to get an understanding with McKittrick for another year, but had been put off from time to time; that on December 23d, eight days after the expiration of said contract, he called on McKittrick, in the latter's office, and said to him that as appellant's written employment had lapsed eight days before, and as there were only a few days between then and the first of January in which to seek employment with other firms, if respondent wished to retain his services longer he must have a contract for another year or he would quit respondent's service then and there; that he had been put off twice before and wanted an understanding or contract at once so that he could go ahead without worry; that McKittrick asked him how he was getting along in his department, and appellant said he was very busy as they were in the height of the season getting men out—had about 110 salesmen on the line and others in preparation; that McKittrick then said: "Go ahead, you're all right; get your men out and don't let that worry you;" that appellant took McKittrick at his word and worked until February 15th without any question in his mind. It was on February 15th that he was notified his services would be discontinued on March 1st. McKittrick denied this conversation as related by appellant and said that when accosted by the latter on December 23d, he (McKittrick) was working on his books in order to get out a report for a stockholders' meeting and when appellant said if he did not get a contract he would leave, that he (McKittrick) said:

"Mr. Embry, I am just getting ready for the stockholders' meeting to-morrow, I have no time to take it up now; I have told you before I would not take it up

127 App—25

until I had these matters out of the way; you will have to see me at a later time. I said: 'Go back upstairs and get your men out on the road.' I may have asked him one or two other questions relative to the department; I don't remember. The whole conversation did not take more than a minute."

Embry also swore that when he was notified he would be discharged, he complained to McKittrick about it, as being a violation of their contract, and McKittrick said it was due to the action of the board of directors and not to any personal action of his and that others would suffer by what the board had done as well as Embry. Appellant requested an instruction to the jury setting out in substance the conversation between him and McKittrick according to his version and declaring that those facts, if found to be true, constituted a contract between the parties that defendant would pay plaintiff the sum of $2,000 for another year, provided the jury believed from the evidence that plaintiff commenced said work believing he was to have $2,000 for the year's work. This instruction was refused but the court gave another embodying in substance appellant's version of the conversation, and declaring it made a contract "if you (the jury) find both parties thereby intended and did contract with each other for plaintiff's employment for one year from and including December 23, 1903, at a salary of $2,000 per annum." Embry swore that on several occasions when he spoke to McKittrick about employment for the ensuing year, he asked for a renewal of his former contract and that on December 23d, the date of the alleged renewal, he went into Mr. McKittrick's office and told him his contract had expired and he wanted to renew it for a year, having always worked under year contracts. Neither the refused instruction nor the one given by the court embodied facts quite as strong as appellant's testimony, because neither referred to appellant's alleged state-

ment to McKittrick, that unless he was re-employed he would stop work for respondent then and there. It is assigned for error that the court required the jury, in order to return a verdict for appellant, not only to find the conversation occurred as appellant swore, but that both parties intended by such conversation to contract with each other for plaintiff's employment for the year from December, 1903, at a salary of $2,000. If it appeared from the record that there was a dispute between the parties as to the terms on which appellant wanted re-employment, there might have been sound reason for inserting this clause in the instruction; but no issue was made that they split on terms; the testimony of McKittrick tending to prove only that he refused to enter into a contract with appellant regarding another year's employment until the annual meeting of stockholders was out of the way. Indeed, as to the proposed terms McKittrick agrees with Embry; for the former swore as follows: "Mr. Embry said he wanted to know *about the renewal of his contract;* said if he did not have the contract made he would leave." As the two witnesses coincided as to the terms of the proposed re-employment, there was no reason for inserting the above mentioned clause in the instruction in order that it might be settled by the jury whether or not plaintiff, if employed for one year from December 23, 1903, was to be paid $2000 a year. Therefore it remains to determine whether or not this part of the instruction was a correct statement of the law in regard to what was necessary to constitute a contract between the parties; that is to say, whether the formation of a contract by what, according to Embry was said, depended on the intention of both Embry and McKittrick. Or, to put the question more precisely, did what was said constitute a contract of re-employment on the previous terms irrespective of the intention or purpose of McKittrick? Judicial opinion and elementary treatises abound in statements of the rule

that to constitute a contract there must be a meeting of
the minds of the parties and both must agree to the same
thing in the same sense. Generally speaking this may
be true; but it is not literally or universally true. That
is to say, the inner intention of parties to a conversation
subsequently alleged to create a contract, cannot either
make a contract of what transpired or prevent one from
arising, if the words used were sufficient to constitute a
contract. In so far as their intention is an influential
element, it is only such intention as the words or acts
of the parties indicate; not one secretly cherished which
is inconsistent with those words or acts. The rule is thus
stated by a text-writer and many decisions are cited in
support of his text: "The primary object of construc-
tion in contract law is to discover the intention of the
parties. This intention in express contracts is, in the
first instance, embodied in the words which the parties
have used and is to be deduced therefrom. This rule ap-
plies to oral contracts, as well as to contracts in writing,
and is the rule recognized by courts of equity." [2
Paige, Contracts, sec. 1104.] So it is said in another
work: "Now this measure of the contents of the promise
will be found to coincide, in the usual dealings of men
of good faith and ordinary competence, both with the
actual intention of the promisor and with the actual ex-
pectation of the promisee. But this is not a constant or
a necessary coincidence. In exceptional cases a prom-
isor may be bound to perform something which he did
not intend to promise, or a promisee may not be entitled
to require that performance which he understood to be
promised to him." [Walds-Pollock, Contracts (3 Ed.),
309.] In Brewington v. Mesker, 51 Mo. App. 348, 356,
it is said that the meeting of minds which is essential
to the formation of a contract, is not determined by the
secret intention of the parties, but by their expressed in-
tention, which may be wholly at variance with the for-
mer. In Machine Co. v. Criswell, 58 Mo. App. 470, an

instruction was given on the issue of whether the sale of a machine occurred, which told the jury that an intention on the part of the seller to pass the title and of the purchaser to receive and accept the machine for the purpose of making it his own, was essential to a sale, and if the jury believed such intention did not exist in the minds of both parties at the time and was not made known to each other, then there was no sale notwithstanding the delivery. In commenting on this instruction the court said:

"The latter clause of the instruction is erroneous and misleading. It is true that in every case of purchase the question of sale or no sale is a matter of intention; but such intention must always be determined by the conduct, acts and express declarations, of the parties and not by the secret intention existing in the mind or minds of the contracting parties. If the validity of such a contract depended upon secret intentions of the parties, then no oral contract of sale could be relied on with safety. [58 Mo. loc. cit. 473.]"

In Smith v. Hughes, L. R. 6 Q. B. 597, 607, it was said:

"If, whatever a man's real intention may be, he so conducts himself that a reasonable man would believe that he was assenting to the terms proposed by the other party, and that other party upon that belief enters into the contract with him, the man thus conducting himself would be equally bound as if he intended to agree to the other party's terms."

And that doctrine was adopted in Phillip v. Gallant, 62 N. Y. 256.

In 9 Cyc. 245, we find the following text:

"The law imputes to a person an intention corresponding to the reasonable meaning of his words and acts. It judges his intention by his outward expressions and excludes all questions in regard to his unexpressed intention. If his words or acts, judged by a

reasonable standard, manifest an intention to agree in regard to the matter in question, that agreement is established, and it is immaterial what may be the real but unexpressed state of his mind on the subject."

Even more pointed was the language of Baron BRAMWELL in Brown v. Hare, 3 Hurlst. & N. *484, *495:

"Intention is immaterial till it manifests itself in an act. If a man intends to buy, and says so to the intended seller, and he intends to sell and says so to the intended buyer, there is a contract of sale; and so there would be if neither had the intention."

In view of those authorities we hold that though McKittrick may not have intended to employ Embry by what transpired between them according to the latter's testimony, yet if what McKittrick said would have been taken by a reasonable man to be an employment, and Embry so understood it, it constituted a valid contract of employment for the ensuing year.

The next question is whether or not the language used was of that character; namely, was such that Embry, as a reasonable man, might consider he was re-employed for the ensuing year on the previous terms, and act accordingly. We do not say that in every instance it would be for the court to pronounce on this question, because, peradventure, instances might arise in which there would be such an ambiguity in the language relied on to show an assent by the obligor to the proposal of the obligee, that it would be for the jury to say whether a reasonable mind would take it to signify acceptance of the proposal. [Belt v. Goode, 31 Mo. 128; Davies v. Baldwin, 66 Mo. App. 577.] In Lancaster v. Elliott, 28 Mo. App. 86, 92, the opinion, as to the immediate point, reads:

"The interpretation of a contract in writing is always a matter of law for determination by the court, and equally so, upon like principles, is the question what acts and words, in nearly every case, will suffice to con-

stitute an acceptance by one party, of a proposal submitted by the other, so that a contract or agreement thereby becomes matured."

The general rule is that it is for the court to construe the effect of writing relied on to make a contract and also the effect of unambiguous oral words. [Belt v. Goode, supra; Brannock v. Elmore, 114 Mo. 55, 21 S. W. 451; Norton v. Higbee, 38 Mo. App. 467, 471.] However, if the words are in dispute, the question of whether they were used or not is for the jury. [Belt v. Goode, supra.] With those rules of law in mind, let us recur to the conversation of December 23d between Embry and McKittrick as related by the former. Embry was demanding a renewal of his contract, saying he had been put off from time to time and that he had only a few days before the end of the year in which to seek employment from other houses, and that he would quit then and there unless he was re-employed. McKittrick inquired how he was getting along with the department and Embry said they (i. e., the employees of the department) were very busy getting out salesmen; whereupon McKittrick said: "Go ahead, you are all right; get your men out and do not let that worry you." We think no reasonable man would construe that answer to Embry's demand that he be employed for another year, otherwise than as an assent to the demand, and that Embry had the right to rely on it as an assent. The natural inference is, though we do not find it testified to, that Embry was at work getting samples ready for the salesmen to use during the ensuing season. Now when he was complaining of the worry and mental distress he was under because of his uncertainty about the future, and his urgent need, either of an immediate contract with respondent, or a refusal by it to make one, leaving him free to seek employment elsewhere, McKittrick must have answered as he did for the purpose of assuring appellant that any apprehension was needless, as appellant's services would

be retained by the respondent. The answer was unambiguous, and we rule that if the conversation was according to appellant's version and he understood he was employed, it constituted in law a valid contract of reemployment, and the court erred in making the formation of a contract depend on a finding that both parties intended to make one. It was only necessary that Embry, as a reasonable man, had a right to and did so understand.

Some other rulings are assigned for error by the appellant, but we will not discuss them because we think they are devoid of merit.

The judgment is reversed and the cause remanded. All concur.