BOECKLER LUMBER COMPANY, Appellant, v. CHEROKEE REALTY COMPANY, GEORGE H. BROWN, Trustee Massachusetts Mutual Life Insurance Company, and JAMES LINDSAY, Respondents.

St. Louis Court of Appeals, February 23, 1909.

1. CONTRACTS: Meeting of Minds. Where a contractor submitted to lumber dealers a list of different pieces of lumber of various dimensions which he needed for a house, so that such lumber dealers might present their bids for furnishing the same, and where one lumber dealer presented a bid to furnish the requisite number of pieces at a given sum, but made a mistake in one item in carrying out the number of feet so that he thought he was furnishing a less quantity of lumber than the number of pieces called for, the contract was nevertheless complete and the court was justified in finding that the lumber dealer agreed to supply the number of pieces for the price bid.

2. ———: ———: Provision for Correction. The fact that in the bid was a stipulation that "errors in extension and footing are subject to correction," did not prevent the contract from

being complete; such provision was meant to stipulate for errors occurring in the total price of some item or in adding all the totals and did not apply to a miscalculation as to the number of feet in an item where a lump bid was asked for and made.

3. ———: ———: **Patent Ambiguity.** The bid as thus presented contained no patent ambiguity which prevented the meeting of minds of the parties on the essentials of the contract, for the call for the number of pieces in the item in question prevailed over the call for the number of feet opposite the item.

4. ———: ———: **Mutual Mistake.** In such case there was no mutual mistake; the mistake was only that of the bidder so that he could not recover of the contractor a sum in excess of his bid.

Appeal from St. Louis City Circuit Court.——— ———
Judge.

AFFIRMED.

*Rudolph Schulenburg* for appellant.

(1)  Under the pleadings the burden to establish this contract by clear and satisfactory evidence rests upon defendant.  Taylor v. Von Schrader, 107 Mo. 225; Arnold v. Cason, 95 Mo. App. 437; Strange v. Crowley, 91 Mo. 287; Veth v. Gierth, 92 Mo. 97.  (2)  The bid in question and its acceptance is ambiguous, conflicting in its parts, coupled with conditions, and shows on its face that the minds of plaintiff and defendant have not met and no valid contract has been entered into between the parties.  Pollock on Contract (4 Ed.), p. 38; Northam v. Gordon, 46 Cal. 582; Sawyer v. Brossart, 67 Iowa 678; Green v. Cole, 103 Mo. 70; Brewington v. Mesker, 51 Mo. App. 384; Harran v. Foley, 62 Wis. 584; German Co. v. Telegraph Co., 137 Cal. 598; Webster v. Coal, 30 Beavan 62; Singer v. Match Co., 117 Ga. 86; Mammenhoff v. Randall, 15 Ind. App. 44; Hartford v. Jackson, 28 Conn. 514.  (3)  The above noted condition entered the bid as an essential constituent and became a part of it, to be observed by the

party proposing as well as by the party accepting. 1 Paige on Contracts, sec. 61; 7 Am. & Eng. Ency. of Law (2 Ed.), p. 131; Hart v. Bray, 50 Ala. 446; Lawrence v. Railroad, 84 Wis. 427; Bank v. Ferris, 77 Mo. App. 190.

*Vital W. Garesche* for respondents.

(1)  This case was tried by the court sitting as a jury and the finding and verdict will not be disturbed if there is any evidence in the record to support it. State ex rel. v. Purcell, 131 Mo. 320; Cook v. Farrah, 105 Mo. 508; McGregor v. Construction Co., 188 Mo. 621; Handlan v. McManus, 100 Mo. 124; Vogt v. Butler, 105 Mo. 479; Bissell v. Warde, 129 Mo. 439; James v. Insurance Co., 148 Mo. 15.  (2)  No mutual mistake is shown by the evidence and appellant cannot take advantage of its own mistake, unknown to respondent at the time the contract was made, to relieve it, appellant, of the burden of performing the contract as made.  20 Am. and Eng. Ency. of Law (2 Ed.), p. 813; Stettheimer v. Killip, 75 N. Y. 282; Wilson v. Land Co., 77 N. C. 445.

STATEMENT.—Appellant company seeks a lien against a lot and building in which respondents are interested.  Appellant, a dealer in lumber, sold to the Cherokee Realty Company, then the owner of the lot and intending to build on it, a bill of lumber to be used in the construction of the building.  The other respondents obtained their interests after construction work had begun and subject to a lien for appellant's demand.  The Cherokee Realty Company was controlled by Herbert A. Vrooman.  Vrooman had built other houses in St. Louis and his method of buying lumber for a house he meant to build, was to have his chief carpenter make a list of the pieces of lumber of the various kinds he would need for the building and sub-

mit copies of this list to concerns which sold lumber, for competitive bids for the entire order at a round price. That method was pursued in the instance of the building on which the lien is sought. Vrooman's carpenter prepared a list of the lumber needed for said building, which list was composed of twenty-five or more items, and each item contained the requisite number of pieces of lumber of given dimensions. For instance, 60 pieces 2″x2″x21′; 116 pieces 2″x16″x20′. and so on. The list stated nothing concerning the number of hundreds or thousands of feet of lumber there would be in each item, but when the dealers made their estimates from the list of the lump sum for which they would furnish the lumber called for, their practice was to extend opposite each item the number of thousand feet required to fill said item. This was done by the lumbermen for their own information and because lumber was valued and sold by the thousand square or cubic feet. Not only would they extend opposite each item the number of feet of lumber called for, but the price of all the pieces mentioned in the item at so much per thousand feet. By adding the column of prices thus formed, a dealer would ascertain the sum for which he would be willing to furnish the list of lumber submitted by Vrooman; who requested a lump bid for the total list, and paid no attention to the quantity of feet in each item or the prices of the different kinds of lumber designated in the several items. The lumber dealers prepared their bids in substantially the following form, which is a copy of appellant's estimate or bid on the occasion in question:

Lumber Co. v. Realty Co.

| —OFFICE OF— | Items O. K. ...... |
|---|---|
| **BOECKELER LUMBER CO.** | |
| Manufacturer and Dealer in | |
| LUMBER, LATH, SHINGLES, PICKETS, ETC. | |
| BRANCH AND HALL STS. | |
| Phones: Bell, Tyler 740, 741, 2651 | Feet O. K. ...... |
| Kinloch, Central 4066 | |
| EASTON AVE. AND SARAH ST. | |
| Phones: Bell, Lindell 924 | |
| Kinloch, Delmar 1707 | |
| 14th ST. NORTH OF CASS AVE. | |
| Phones: Bell, Tyler 291 | Exten. O. K. ..... |
| Kinloch, Central 1755 | |
| EASTON AVE. AND WABASH RAILROAD | |
| Phones: Bell, Forest 5357 | |
| Kinloch, Delmar 705 | |
| St. Louis, Mo., 6-7, 1905. | Contractor ...... |
| Mr. H. A. Vrooman Realty Co., | |
| 822 Chestnut St. | |
| Please find below our ESTIMATE. | |
| Delivered to Building of ........... | |
| At Delmar and Union | Owner ........... |

**CONDITIONS**—This proposal is based on the articles as specified. Errors in extension and footing are subject to correction. The latest Grading and Classification Rules and Regulations to govern this contract. Lumber and materials to be returned only by special agreement. Payments in cash to be made from time to time on amount of respective deliveries equal to eighty per cent (80) thereof, balance when all material is delivered; privilege reserved to cancel contract in default of payments as stipulated. Deliveries subject to delays caused by strikes, accidents, fire, the elements or other causes, beyond our control.

Location ........

Loan ...........

THIS ESTIMATE HOLDS GOOD IF ACCEPTED WITHIN......DAYS FROM DATE.

Handled by ......

| Pieces | Size | Length | Feet | | | |
|---|---|---|---|---|---|---|
| 60 | 2 12 | 22 | 2640 | ⎫ | 22 | 58.08 |
| 100 | 2 12 | 20 | 4000 | | 20 | |
| 20 | 2 12 | 18 | 720 | | 20 | 94.40 |
| 20 | 2 12 | 16 | 640 | | 19 | 12.16 |
| 45 | 2 16 | 22 | 2640 | | 25 | 66.00 |
| 116 | 2 16 | 20 | 6186 | | 24 | |
| 40 | 2 16 | 18 | 1920 | | 24 | |
| 30 | 2 16 | 16 | 1280 | | 24 | 225.26 |
| 20 | 2 10 | 24 | 800 | | 21½ | |
| 60 | 2 10 | 22 | 2200 | No. 1 Y P | 21½ | 64.50 |
| 275 | 2 10 | 20 | 9167 | | 20½ | 187.92 |
| 120 | 2 10 | 18 | 3600 | | 20 | 72.00 |
| 90 | 2 10 | 16 | 2400 | | 19 | |
| 10 | 2 8 | 24 | 320 | | 19 | |
| 170 | 2 8 | 22 | 4986 | | 19 | |
| 300 | 2 8 | 20 | 8000 | | 19 | |
| 150 | 2 8 | 18 | 3600 | | 19 | |
| 30 | 2 8 | 16 | 640 | | 19 | 366.81 |
| 22 | 4 6 | 10 | 440 | | 18 | 11.52 |
| 1800 | 2 4 | 20 | 2400 | | 19 | |
| 200 | 3 4 | 12 | 2400 | ⎭ | 19 | 53.96 |

7000 Lin 1x3 Y P Bridging    18    43.20

15000 Lin 1x2 Grounds Y P    4½    31.50

1  6    25500 No. 2 Y P fence    3    45.00    16

1 10    14000 Sheathing No. 2 Y P Bds    16    632.00

$1960.00 Nineteen Hundred & Sixty Dollars.

BOECKELER LBR. CO.,

W. L. Boeckeler.

1964.31

A perforated line ran lengthwise through the paper on which the estimate was made, and after appellant had set down its computation of the number of feet and the cost of each item at so much per thousand feet, it detached and retained the part of the paper to the right of the perforated line and which contained prices and amounts opposite each item. The portion of the paper to the left of the line, was handed to Vrooman, as ap-appellant's bid, or offer to furnish the lumber called for in the list furnished by Vrooman. Appellant's bid in this instance was $1,960, for all the lumber contained in the list. The next lowest bid was the Darlington Lumber Company's which was $2,230 or $270 more than appellant's. An error in computation occurred in appellant's estimate, thereby throwing the bid lower than it otherwise would have been. The employee of appellant who made the extension opposite the items, computed there would be 2,400 ft. of lumber in the 1,800 pieces 2"x4"x20' whereas in truth there were 24,000 feet. As the price of this lumber was $19 per thousand, if the proper quantity had been taken into account in making the estimate, appellant's bid would have been $410.40 larger than it was, or $2,370.40, which is $140 more than the Darlington Lumber Company's bid. The error was not detected until after the lumber had been furnished and the house erected. In making out a bill against Vrooman, appellant increased the amount of the bill by the sum of $410.40, thereby correcting the error, but Vrooman refused to pay, insisting appellant had made an offer to furnish all the lumber described in his list and he was not liable for more than the amount bid. This statement presents the point of controversy in the case. Appellant's secretary signed the bid without looking over the figures in it and submitted the paper as an offer to furnish all the lumber in Vrooman's list for $1,960. There was nothing on the face of the paper to apprise Vrooman of the mistake, except the number of feet set down to the right of the

item of 1,900 pieces was 2,400. Vrooman testified he paid no attention to the figures opposite the different items and noticed only the price for which appellant agreed to furnish all the lumber in the list; that such was his habit in handling competitive bids of lumber dealers, and he always bought lumber by the piece and not by feet. The evidence in the case is without conflict, and hence though appellant's counsel requested three declarations of law, it would be useless to state them in full. They all asked the court to declare a patent ambiguity was shown on the fact of appellant's offer. In two the theory was propounded that the number of feet opposite the 1,800 pieces prevailed over the number of pieces and the true meaning of the offer was to furnish 180 instead of 1,800 pieces. The other proceeded on the theory that if the court found a mutual mistake had occurred, no contract was made and appellant should recover the reasonable value of the lumber. The action is to enforce a mechanic's lien for the reasonable value of the material furnished, without reference to a possible contract between the parties—an action *quantum valebat*. In defense respondents introduced the bid and proved its acceptance without objection, and the court below rendered judgment enforcing the lien for the amount of appellant's demand as per its offer, plus the price of certain extras furnished by it and minus payments appellant had made on account.

GOODE, J. (after stating the facts).—Appellant contends it should have had judgment for the reasonable value per thousand feet of all the material furnished, less payments and also less $140, the difference between the Darlington Lumber Company's bid and the reasonable value of the material appellant furnished. The theory is this: Vrooman would have accepted the Darlington Company's bid but for the error in appellant's proposal, whereby it was reduced below the Darlington Company's, and as the latter's was $140 less than the

proof shows was the reasonable value of the material sold by appellant, Vrooman ought to get the benefit of that difference, but should derive no further benefit from appellant's error in computation. In support of this idea it is insisted no contract was formed by the acceptance of appellant's bid, because it was made upon a mistake of fact, which, by a clause of the proposal, was subject to correction. Vrooman's call for bids contained a list of the different pieces of lumber of various dimensions which he needed for his house, but said nothing about the quantity of feet the items would contain, or the prices of the several kinds of lumber wanted. He asked for lump offers, without reference to the quantities in the items or the total quantity or separate prices. Appellant responded to this proposal by offering to furnish all the lumber mentioned in the list for so much money, and the acceptance of this bid made a complete contract, for the minds of the parties had met on the essential elements of a contract. Vrooman asked for an offer to sell him the lumber, including 1,800 pieces 2″x4″x20′; appellant offered to sell and intended to sell the whole list for a stated price, and Vrooman accepted. We see no element of the contract on which the minds of these parties failed to meet. To speak in hackneyed phrase, they assented to the same thing in the same sense. Appellant's proposal conformed to respondents' requirement in respect of the bids to be submitted and was accepted unconditionally. [Wald's Pollock, Contracts (3 Ed.), top page 582; Scott v. Davis, 141 Mo. 213, 225.] This subject is illuminated in the treatise just cited in the chapter on Mistake. As peculiarly apropos to this case we refer to top pages 605, et seq. and will quote two excerpts from the first of said pages:

"If the proposal is misunderstood by the acceptor, it is for him to show that the misunderstanding was reasonable. 'Where there has been no misrepresentation, and where there is no ambiguity in the terms of the

contract, the defendant cannot be allowed to evade the performance of it by the simple statement that he has made a mistake.' A makes an offer to B to take a lease of a named farm, specifying as its contents land amounting to 250 acres; B's agent, who meant to invite offers for only 200 acres, accepts A's offer without examining its particulars. Here there is a contract binding on B, and A is entitled to specific performance to the extent of B's power to give it, with a proportionate reduction of the rent.

"If, on the other hand, the proposal is by accident wrongly expressed, the proposer must show that the acceptor could not reasonably have supposed it in its actual form to convey the proposer's real intention. This occurred in Webster v. Cecil (30 Beav. 62) where the defendant sent a written offer to sell property and wrote 1,100£ for 2.100£ by mistake in a hurried addition of items performed on a separate piece of paper. This paper was kept by him and produced to the court. On receiving the acceptance he discovered the mistake and at once gave notice of it. It appeared that the plaintiff had reason to know the real value of the property. Under the circumstances specific performance was refused. The case is explained by James L. J. as one 'where a person snapped at an offer which he must have perfectly well known to be made by mistake.' "

Where one party makes a proposition in terms which would induce a reasonable man to think it was meant as written, and the other party accepts, a contract is formed regardless of the mistakes, or even the intention of one of the parties. This is the general rule of law, though perhaps exceptions to it might occur. [See authorities cited in Embry v. Dry Goods Co., 127 Mo. App. 383.] Appellant's assent to the agreement was due to an arithmetical error which one of its employees had fallen into in a computation made to enable appellant to bid intelligently; but of this mistake Vrooman knew nothing, nor do we find reason to

think he was remiss in not detecting it. The quantity of feet in each item was written by appellant's employee opposite the item, but as Vrooman had called for one bid for the whole list and was accustomed to buy by the piece and not by feet, he had no interest in the number of feet in the item. That the figures indicated a deficiency in the quantity of feet in the disputed item, was a fact too likely to escape his notice, for him to be held negligent in not detecting the mistake, and he said he neither detected it nor even noticed the number of feet. The first three blanks at the head of the side of the proposal kept by appellant, implied a duty on the part of whomsoever made the bid, to verify the items and the feet and price extensions. The secretary, Boeckler, testified: "I signed this bid, did not check or look it over—I look over the dollars and cents and take it for granted everything is all right; that those figures were based on the list of lumber required for the building, and which was submitted to us by Mr. Vrooman—  . . .  I bid $1,960 for the lumber included in that estimate." Carelessness in omitting to verify the feet extensions well might have been ascribed by the court below to appellant and not to respondent, if it was a material circumstance.

Stress is laid on this sentence of the bid: "Errors in extension and footing are subject to correction." If on a true view, these words were part of appellant's offer, the legal result is not that no contract was formed by respondent's acceptance, because of an ambiguity on the face of the offer, but that a contract was formed which embraced a stipulation to correct mistakes. It is unreasonable to say the parties meant to stipulate for a correction of errors occurring in the total price of some item, or in adding all the totals of prices, not only because Vrooman had asked for a lump bid without regard to prices or quantity of feet, but because neither the prices per thousand feet of the items, or the total price of each, or the sum of the totals, was handed

to him.  To say these might be altered, thereby increasing the amount of the bid after he had accepted it, would be equivalent to saying he agreed to accept a bid blindly and without knowing how much it might turn out to be.  No such purpose was entertained by the parties.  It may be argued more plausibly Vrooman agreed to a correction in the extension of the quantities of feet in the different items, because those quantities were shown on the part of the paper handed to him.  We think this argument is unsound for these reasons:  Vrooman had requested a round bid for all the pieces of different kinds of lumber listed by him. Presumably his purposes were to learn what his bill for lumber for the building would be, and avoid taking separate bids for the different items and, perchance, buying from several dealers.  He had made no demand for a bid by feet or a statement of the feet called for in any or all the items; and because appellant chose to insert the feet in its proposal, it does not follow the offer was to sell by feet.  The secretary swore he bid to furnish the lumber included in the list, and as showing its understanding of what it had agreed to do, we point to the fact that appellant furnished 1,800 pieces instead of 180, or 2,400 feet.  The evidence demonstrates, we think, the intention of appellant was to make a bid which would be good regardless of the feet to be furnished, and that it computed the feet only for its own information and as the basis for an estimate. Respondent accepted upon the same theory.  The proposal was made on a printed form, and we think the words in question were intended to apply to estimates in which prices were set opposite the items, then added and the whole submitted to customers to be considered in passing on the bid.  If the foregoing conclusion does not follow inevitably from all the facts, the trial court was warranted to find it from the facts, as this contract ought to be interpreted with reference to the situ-

ation and conditions under which it was made. [Black River Lumber Co. v. Warner, 93 Mo. 374.]

Our views are these: first, an agreement was entered into by the parties; second, the court below was justified in finding this agreement was that appellant should supply respondent with all the pieces of lumber listed by the latter, for $1,960, and without reference to the quantity of feet the various kinds would include; third, the bid was not understood by the parties to be subject to increase to correct an error made in computing the number of feet in any item; fourth, there was no patent ambiguity on the face of the bid which prevented the minds of the parties from meeting on the essentials of a contract; fifth, the call for feet opposite the items did not prevail over the number of pieces of lumber appellant agreed to furnish. It follows from the last two propositions the requested instructions were rightly refused.

Can appellant have relief from the contract because of the mistake which induced it? Several matters are to be considered in connection with this inquiry. The action is assumpsit and at law instead of in equity; and if instances have occurred in which courts of law relieved against contracts due to a mistake of fact, they are very rare and based on exceptional circumstances not appearing in the present case. Commonly, if not universally, such relief must be sought in a court of equity. Perchance if appellant had framed a petition in the nature of a bill in equity, setting forth the facts and asking relief, he might have stated a case, though we do not pass on this question, having no occasion to do so. Another fact to be taken into account is this: Error was not detected until the contract had been fully executed, except paying for the lumber, and it would be impossible on a rescission of the agreement, to put the parties *in statu quo*. The mistake was not mutual, for Vrooman was not attending to the number of feet nor was he bound to attend to it. The mistake was

not at all due to the fault of Vrooman, but entirely to appellants. Neither is this a case of snapping up an offer which the party knows was made inadvertently, as in Singer v. Match Co., 117 Ga. 86, and Harram v. Foley, 62 Wis. 584. In an extended research we have found no authority for the proposition that the contract should not be enforced against appellant as made, and have found quite pertinent authorities for the proposition that it should be. [McCormack v. Lynch, 69 Mo. App. 524; DuBois Borough v. Water Works, 176 Pa. St. 430; Steltheimer v. Killip, 75 N. Y. 282; Rayburn v. Deaver, 8 Mo. 104.] Every case cited in the brief for appellant or which we have run across in our investigation, where relief was granted against a contract due to an error of fact, was a suit in equity; and, moreover, the conditions of the cases were more auspicious for the careless party than are those presented here. That is to say, the contract was either still executory, or the mistake was mutual, or it was possible to restore the original status, or some other peculiarity existed to warrant relief in chancery. Probably it would be impossible to state accurately and comprehensively, and certainly it would be dangerous to try to state, the limit in which the jurisdiction of chancery to relieve against the consequences of a mistake of fact, will be exercised. These cases will throw light on the question and demonstrate that appellant can have no relief at law. [Leitensdorfer v. Delphy, 15 Mo. 160; Hook v. Craighead, 32 Mo. 405; Miles v. Stevens, 45 Am. Dec. 62, and notes; School Comrs. v. Bender, 36 Ind. App. 164; Moffett, etc., Co. v. Rochester, 178 U. S. 373; Neill v. Railroad, 20 Law Times Rep. (n. s.) 864.]

The judgment is affirmed. All concur.